381 A.2d 418

## COMMONWEALTH of Pennsylvania

v.

### James TAYLOR, Appellant (two cases).

Supreme Court of Pennsylvania.

Argued June 23, 1975.

Decided Oct. 28, 1977.

Jerome E. Furman, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Deborah E. Glass, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Appellant James Taylor appeals from judgments of sentence entered after a jury convicted him of murder of the

first degree and aggravated robbery.[1] We reverse the judgment on both charges because a defense witness was improperly impeached by admissions of arrests which had not resulted in convictions.

## I.

Robert Morgan, a housepainter by trade, was beaten on September 1, 1971. He died of injuries two weeks later.

Shortly after the incident took place, police officers investigating the beating were called to a nearby State Liquor Store where appellant and a guard had been fighting. The guard had subdued appellant only by threatening him with a gun. The police arrested appellant and frisked him, taking a Byn brand watch from his pocket. The watch was flecked with what looked like paint. A warranty for Byn brand watch was found in Robert Morgan's wallet. When arrested, appellant's shoes and the bottom of his trousers were wet with what turned out to be type A blood. Robert Morgan had type A blood. Appellant did not.

About twenty-four hours passed between arrest and arraignment. During this time, appellant gave several incriminating statements to the police.[2]

Appellant testified that the statements he had made in custody were coerced. He also testified that the watch

---

1. We hear these appeals pursuant to the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202, 17 P.S. § 211.202 (Supp.1977).

2. We are required to examine the record to determine whether the evidence is sufficient to support any conviction for murder in the first degree. Act of February 15, 1870, P.L. 15, § 2, 19 P.S. § 1187 (1964). An examination of this record reveals that the evidence is sufficient to support the verdict.

confiscated by the police had been given to him by a friend in Washington.

Also testifying in appellant's defense was Ezra Dobson, who knew appellant when they were both participating in a drug rehabilitation program in Louisville during the months preceding the beating of Robert Morgan. He testified that appellant had owned the watch in question when they were in Louisville, and that he, Dobson, had worn it on occasions.

On cross-examination, Mr. Dobson admitted that he had been convicted of two burglaries and a robbery. On redirect, he testified that all these offenses had been drug-related, and that since he had left Louisville he had been completely drug free and considered himself rehabilitated. On re-cross, he admitted over objection that since Louisville he had been arrested for one robbery, on which the charges were dropped, and two burglaries, on which charges were still pending. Appellant contends that allowing this cross-examination was error. We agree.[3]

## II.

The veracity of a witness may not be impeached by evidence of prior arrests which have not led to convictions. *Commonwealth v. Katchmer*, 453 Pa. 461, 464, 309 A.2d 591, 593 (1975); *Commonwealth v. Ross*, 434 Pa. 167, 170, 252 A.2d 661, 662 (1969); *Stout v. Rassel*, 2 Yeates 334, 338 (Pa.1798); 3A J. Wigmore, Evidence § 980a (Chadbourn Rev.1970). In *Commonwealth v. Ross*, 434 Pa. at 170, 252 A.2d at 662 we explained:

**3.** We do not decide the merits of appellant's other claims: (1) that the trial judge erred in refusing to give a voluntary manslaughter instruction, (2) that the blood type evidence should not have been admitted, and (3) that appellant's last statement was the product of undue pre-arraignment delay and should not have been admitted.

"As a general rule . . . there must be a conviction . . . before such evidence [of a prior arrest] is relevant, because there is a vast difference between a conviction and a mere accusation. An inquiry as to a mere arrest or indictment is not permitted because an arrest or indictment does not establish guilt and the reception of such evidence would merely constitute the reception of somebody's hearsay assertion of the witness' guilt."

Wigmore, *supra*, notes that an arrest is "quite consistent with innocence."[4] Because the presumption of innocence is at the heart of our criminal jurisprudence, it would be improper to infer that a witness is not credible from the fact that the witness has been arrested for a crime.[5] Cf. *United States v. Hale*, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 49 (1975) (silence during police questioning is ambiguous and cannot be used to impeach credibility).

The Commonwealth contends that appellant put the witness' character in issue by the re-direct examination concerning the drug rehabilitation of the witness, thus making cross-examination as to arrests permissible. The trial court, in ruling on post-trial motions, concluded that the cross-examination concerning the arrests was proper. It relied on the Act of March 15, 1911, P.L. 20, 19 P.S. § 711

---

4. We have also held that a witness may not be impeached by questions concerning criminal activity not resulting in arrest. *Marshall v. Carr*, 271 Pa. 271, 114 A. 500 (1921); *Hoffman v. Kemerer*, 44 Pa. 452 (1863); *Elliott v. Boyle*, 31 Pa. 65 (1857). Note that where the question is whether the witness performed an illegal act, not whether someone arrested him for an alleged illegal act, the hearsay problem discussed in *Ross* and Wigmore does not exist; yet in *Marshall*, *Hoffman* and *Elliott* we held this sort of impeachment improper.

5. In *Commonwealth v. Kahley*, 467 Pa. 272, 356 A.2d 745 (1976), we noted that the rule has been narrowed to allow impeachment only by convictions for crimes, whether felonies or misdemeanors, involving dishonesty or false statement.

(1964)[6] and a case decided thereunder.[7] We cannot agree. The Act, by its terms, applies only to "any person charged with any crime, and called as a witness in his own behalf." The statute is inapposite where, as here, the witness was not testifying in his own behalf.

We must therefore conclude that the impeachment of Ezra Dobson by prior arrests was error.

■ The improper impeachment contained the potential for extreme prejudice to appellant, requiring that we reverse the murder and aggravated robbery convictions. If the jury disbelieves Ezra Dobson's testimony that appellant owned the watch and instead believes the Commonwealth's theory that the watch belonged to Robert Morgan, then appellant is placed at the scene of the crime. But, if Mr. Dobson's testimony is believed, the most important link between appellant and the crime disappears. Further, if appellant owned the watch, then he did not steal it from Robert Morgan. No evidence was produced that anything else was stolen from the victim. The improper impeachment of Ezra Dobson gave the Commonwealth an opportunity to strike an unfair blow at a key aspect of appellant's defense. The remedy for this error is a new trial.

6. That section provides:
   "Hereafter any person charged with any crime, and called as a witness in his own behalf, shall not be asked, and, if asked, shall not be required to answer, any question tending to show that he has committed, or been charged with, or been convicted of any offense other than the one wherewith he shall then be charged, or tending to show that he has been of bad character or reputation; unless,—
   One. He shall have at such trial, personally or by his advocate, asked questions of the witness for the prosecution with a view to establish his own good reputation or character, or has given evidence tending to prove his own good character or reputation; or,
   Two. He shall have testified at such trial against a codefendant, charged with the same offense."

7. *Commonwealth v. Smith*, 432 Pa. 517, 248 A.2d 24 (1968) (plurality opinion). We leave open the question, never decided by a majority of this Court, whether this statute creates any exception at all to the rule against impeachment by prior arrests.

The judgments of sentence for murder and aggravated robbery are reversed and the case remanded for a new trial.

Former Chief Justice JONES did not participate in the decision of this case.

NIX, J., concurs in the result.