401 A.2d 323

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Wayne Earl LIDDICK, Appellant.**

Supreme Court of Pennsylvania.

Argued March 9, 1979.

Decided May 1, 1979.

William C. Costopoulos, Kollas & Costopoulos, Lemoyne, for appellant.

John C. Uhler, Dist. Atty., York, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

The appellant, Wayne Earl Liddick was convicted of murder of the first degree following a second jury trial in October of 1977.[1] Post-verdict motions were denied and appellant was sentenced to life imprisonment. In this direct appeal appellant raises two contentions, both of which are without merit.

1. In January of 1975, a jury found appellant guilty of murder of the first degree; however the appellant was granted a new trial by the lower court because of the introduction at trial of certain inflammatory photographs depicting the decedent's corpse. The Commonwealth appealed and this Court affirmed the order of the lower court granting a new trial. *Commonwealth v. Liddick*, 471 Pa. 523, 370 A.2d 729 (1977).

Appellant first contends that the evidence was insufficient to support the jury's verdict. The applicable statute which defined murder of the first degree provided [in pertinent part]: "A criminal homicide constitutes murder of the first degree when it is committed by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing." 18 Pa.C.S.A. § 2502(a) (1973). The test for the sufficiency of evidence in a criminal case is whether, viewing all of the evidence admitted at trial in the light most favorable to the Commonwealth and drawing all reasonable inferences favorable to the Commonwealth, there is sufficient evidence to enable the trier of fact to find every element of the crime beyond a reasonable doubt. *Commonwealth v. Bastone*, 466 Pa. 548, 353 A.2d 827 (1976). Viewed in this light the evidence introduced at trial established the following facts: The appellant and his wife, Sharon Liddick, (the deceased) had been separated for nine months prior to the murder. The appellant expressed hatred for the deceased on numerous occasions after she had filed criminal charges against him following their separation. Ronald Liddick, the appellant's cousin, testified that he and appellant had devised a plan to murder the decedent. According to the plan, they were to abduct the decedent following her departure from the Enola Hotel, where she normally visited on Friday nights. The plan involved disabling the decedent's automobile while she was driving from the hotel and then immediately abducting her. The decedent was then to be killed and her body disposed of in a nearby lake. The two men had purchased rafts to transport the body out into the lake, and chains to support weights which would be attached to the body, thus preventing the body from surfacing. Approximately two months prior to the murder, Ronald Liddick refused to participate any further in the plan.

On Friday night, September 7, 1973, the appellant was seen leaving a bar near the Enola Hotel three hours before the deceased left the hotel. The deceased was observed in the Enola Hotel eating pizza around 12:45 a. m. on Saturday, September 8, 1973; one hour later the deceased was seen for

the last time entering her automobile outside the hotel. Fifteen minutes later, at approximately 2:00 a. m., the police found the decedent's car abandoned one block from the Enola Hotel. The car was found stopped in the operating lane of the highway, with one of the rear tires almost flat. The keys were in the ignition and the decedent's pocketbook was on the front seat. The police were unable to locate the deceased until Tuesday, September 11, 1973, when her body surfaced in the lake. The body of the deceased was bound in ropes and chains and weighted down by cement blocks. In most of its determinable aspects the murder occurred according to the plan earlier devised by the appellant and Ronald Liddick.

Commonwealth witness Nellie Serch (with whom the appellant had been living during the times in question) testified that appellant returned home at 8:00 a. m. Saturday, September 8, wearing clothing different from that which he was wearing when he left for work the previous day. She observed the appellant dispose of a piece of rope which she later identified as being similar to the rope found on the decedent's body. She also testified that appellant wanted her to provide him with an alibi from 11:00 p. m. Friday to 8:00 a. m. Saturday, but she refused.

Both Nellie Serch and Ronald Liddick testified to statements made by appellant, following the murder, which indicated appellant's involvement in the crime. While riding in a car with Nellis Serch the appellant arrogantly stated "let them intensify their search" in response to a radio report concerning the police investigation. When asked by Ronald Liddick whether he had simply pushed the body from the shore into the lake the appellant answered "no". Although the evidence implicating the appellant is for the most part circumstantial, "[t]he law in Pennsylvania has consistently recognized that circumstantial evidence may, without more, be the basis of a conviction so long as the inferences drawn therefrom prove the fact or facts in question beyond a reasonable doubt." *Commonwealth v. Treftz*, 465 Pa. 614, 627, 351 A.2d 265, 271 (1975) *cert. denied* 426 U.S. 940, 96

S.Ct. 2658, 49 L.Ed.2d 392 (1976). We find that the Commonwealth's evidence was sufficient to support the jury's verdict of murder of the first degree.

Appellant's second contention is that the trial court erred in allowing the Commonwealth's medical examiner, who performed the autopsy on the deceased, to testify a second time during the trial, in view of the fact that appellant's counsel had stipulated to the medical examiner's prior testimony.

At trial, the medical examiner, Dr. Marlin Aronson, testified that based on the state of decomposition of the body, it appeared the deceased had been dead for two to three days before her body was removed from the water. Using this estimate, the appellant contends that he could have pursued a defense of alibi in light of Nellie Serch's testimony that he returned home at 8:00 a. m. Saturday, almost three and one half days before the body was removed from the water. However, Dr. Aronson also testified that if the decedent's stomach contents could be correlated, a more precise estimate of the time of death could be made. The doctor then stated that the deceased had eaten a doughy like substance, which was consistent with pizza, approximately two hours before her death. Following cross-examination of Dr. Aronson, appellant offered to stipulate to the doctor's testimony and the Commonwealth accepted.

Later in the trial, a witness testified that she had observed the deceased eating a pizza about one hour before the abduction. Dr. Aronson was then recalled by the Commonwealth and asked to estimate the time of death assuming this pizza represented the doughy like substance which was found in the decedent's stomach. Dr. Aronson again estimated that death would have occurred about two hours after the decedent had eaten, but the doctor added that this would have been approximately 3:00 a. m., Saturday, September 8, 1973.

■ Appellant argues that the "additional testimony" contradicted Dr. Aronson's prior testimony and thus violated

the stipulation. The record does not support this argument. The stipulation clearly encompassed Dr. Aronson's prior testimony concerning the possibility of making a more precise estimate of the time of death via the eating of this pizza. Therefore, the "additional testimony" did not contradict the stipulation.

 Appellant next argues that his defense was unfairly prejudiced by the "additional testimony" of Dr. Aronson, to the extent that he was precluded from contesting the "additional testimony" because he had released his medical expert following the stipulation, and decided to rely solely on alibi as his defense. This argument is specious. Even without the additional testimony of Dr. Aronson, the evidence clearly supported the inference that the deceased was murdered around 3 a. m. on Saturday. Thus, Dr. Aronson's "additional testimony" did not cause the defense any unfair prejudice or surprise.[2]

Judgment of sentence affirmed.

MANDERINO, J., filed a dissenting opinion.

MANDERINO, Justice, dissenting.

In reliance upon a stipulation as to the time of death, appellant released his expert witness and was unable to rebut evidence later introduced by the prosecution contradicting this stipulation. Appellant is therefore entitled to a new trial.

The majority opinion sidesteps this issue by finding that the additional testimony did not *contradict* the stipulation but merely made it more precise. This is not so. The original stipulation established the time of death (a crucial point in establishing guilt) to be two to three days prior to the discovery of the body. Appellant's defense was based

---

2. Appellant also complains that the time of death evidence introduced at trial went beyond the scope of the Commonwealth's pre-trial offer. Prior to the trial the Commonwealth advised appellant that it would rely on the autopsy report, and the related testimony adduced at trial in establishing the time of death. The Commonwealth's evidence was obviously within the scope of its pre-trial offer.

upon this fact since appellant had an alibi witness for this time period. When the prosecution introduced the new evidence, the time of death was correlated to the victim's stomach contents. The time of death was then taken out of the time frame to which the parties originally stipulated. Appellant had released his expert and was unable to re-schedule this expert to testify prior to the end of the trial. The record does not support that appellant's reliance on the time of death stipulation was unjustified, and I must dissent.