467 A.2d 1120
**COMMONWEALTH of Pennsylvania**

v.

**Donald SMITH, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 13, 1983.

Decided Nov. 3, 1983.

602

Jack R. Heneks, Jr., Asst. Public Defender, Uniontown, for appellant.

Gerald R. Solomon, Dist. Atty., Uniontown, Marion MacIntyre, Sp. Deputy Atty. Gen., Harrisburg, John M. Zeglen, Asst. Dist. Atty., Uniontown, for appellee.

Before ROBERTS, C.J., and NIX, LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

## OPINION

NIX, Justice.

This is a direct appeal from a conviction of murder in the first degree wherein the jury directed the entry of the sentence of death. The appellant, Donald Smith, was determined to have killed a Mr. Lonnie Hinerman sometime between October 6th and 7th, 1980. The victim's body was discovered in the Cheat River on the morning of October 7, 1980, a short distance from the Ruane-Arnold Coal Tipple in Fayette County, Pennsylvania. After a review of the numerous assignments of error raised herein, we are of the view that the judgment of sentence must be vacated and a new trial granted.

The first claim that must be considered is appellant's charge that the quality of the evidence offered by the Commonwealth was of such a nature as to require the grant of his motion in arrest of judgment. Appellant argues that the Commonwealth's principal fact witnesses, Georgianne Lewis and Edith Smith, her sister, presented testimony so inconsistent and contradictory as to be incapable of supporting the verdict of guilt.

Normally, the evidence is deemed to be sufficient where there is testimony offered to establish each material element of the crime charged and to prove commission of the offense by the accused beyond a reasonable doubt. *Commonwealth v. Davis,* 491 Pa. 363, 421 A.2d 179 (1980); *Commonwealth v. Harper,* 485 Pa. 572, 403 A.2d 536 (1979); *Commonwealth v. Tate,* 485 Pa. 180, 401 A.2d 353 (1979); *Commonwealth v. Liddick,* 485 Pa. 121, 401 A.2d 323 (1979); *Commonwealth v. Todd,* 477 Pa. 529, 384 A.2d 1215 (1978). The question of credibility is left to the jury and the verdict will not be disturbed if the jury determines the evidence is worthy of belief. *Commonwealth v. Farquharson,* 467 Pa. 50, 354 A.2d 545 (1976); *Commonwealth v. Hampton,* 462 Pa. 322, 341 A.2d 101 (1975); *Commonwealth v. Murray,* 460 Pa. 605, 334 A.2d 255 (1975); *Commonwealth v. Oates,* 448 Pa. 486, 295 A.2d 337 (1972); *Commonwealth v. Garvin,* 448 Pa. 258, 293 A.2d 33 (1972).

We have, however, made exception to the general rule that the jury is the sole arbiter of the facts where the testimony is so inherently unreliable that a verdict based upon it could amount to no more than surmise or conjecture. See *Commonwealth v. Farquharson, supra. See also, Commonwealth v. Goldblum,* 498 Pa. 455, 447 A.2d 234 (1982); *Commonwealth v. Upsher,* 497 Pa. 621, 444 A.2d 90 (1982); *Commonwealth v. Galloway,* 495 Pa. 535, 434 A.2d 1220 (1981); *Commonwealth v. Scarpino,* 494 Pa. 421, 431 A.2d 926 (1981); *Commonwealth v. Scarborough,* 491 Pa. 300, 421 A.2d 147 (1980); *Commonwealth v. Hudson,* 489 Pa. 620, 414 A.2d 1381 (1980); *Commonwealth v. Holmes,* 486 Pa. 415, 406 A.2d 510 (1979); *Commonwealth v. Whack,* 482 Pa. 137, 393 A.2d 417 (1978); *Commonwealth v. Harris,* 479 Pa. 131, 387 A.2d 869 (1978); *Commonwealth v. Duncan,* 473 Pa. 62, 373 A.2d 1051 (1977).

Traditionally under our system of jurisprudence, issues of credibility are left to the trier of fact for resolution. *Commonwealth v. Hampton,* 462 Pa. 322, 341 A.2d 101 (1975); *Commonwealth v. Murray,* 460 Pa. 605, 334 A.2d 255 (1975); *Commonwealth v. Oates,* 448 Pa. 486, 295 A.2d

337 (1972); *Commonwealth v. Garvin,* 448 Pa. 258, 293 A.2d 33 (1972).

*  *  *  *  *  *

This concept, however, must be distinguished from an equally fundamental principle that a verdict of guilt may not be based upon surmise or conjecture. *Commonwealth v. Stanley,* 453 Pa. 467, 309 A.2d 408 (1973); *Commonwealth v. Bailey,* 448 Pa. 224, 292 A.2d 345 (1972); *Commonwealth v. McFadden,* 448 Pa. 146, 292 A.2d 358 (1972); *Commonwealth v. Garrett,* 423 Pa. 8, 222 A.2d 902 (1966). Following this principle, courts of this jurisdiction have recognized that where evidence offered to support a verdict of guilt is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, a jury may not be permitted to return such a finding. *Commonwealth v. Bennett,* 224 Pa.Super. 238, 303 A.2d 220 (1973) (and cases cited therein).

*Commonwealth v. Farquharson, supra,* 467 Pa. at 59–60, 354 A.2d at 550.

■ While it is true that Ms. Lewis' various statements contained contradictions and some inconsistencies, we do not conclude that her testimony was so inherently unreliable as to justify a finding that a verdict based upon it must as a matter of law be set aside. In her first statement to police Ms. Lewis related the facts surrounding the death of Lonnie Hinerman without mentioning her presence or the presence of her sister. At appellant's extradition hearing Ms. Lewis testified that Donald Smith was not in Pennsylvania at the time the Hinerman killing occurred. She also at one point maintained that she had no personal involvement in the incident, a fact clearly refuted by her subsequent testimony.

The witness offered as an explanation for these contradictions and inconsistencies her alleged fear of appellant. The jury was aware of the intimate relationship that existed between Ms. Lewis and appellant when these inconsistencies and contradictory statements were being made. The jury was also acquainted with the fact that the prosecution had granted Ms. Lewis immunity for her involvement in the

incident provided she would testify against appellant and tell the truth. Thus the jury had a reasonable basis for rejecting her former statements and accepting her trial testimony as being truthful.[1]

Moreover, the significant inconsistencies and contradictions did not relate to the fact of the killing of Lonnie Hinerman or the circumstances surrounding it, but rather to the persons involved in the incident. Thus it was reasonable to assign Ms. Lewis' initial reluctance to implicate herself and her sister to her fear of prosecution for their involvement. The appellant argues that the grant of immunity provided the motive for Ms. Lewis' efforts to shift the blame upon him.[2] While this is a legitimate argument arising from the evidence presented, it was equally legitimate to conclude that the grant of immunity inspired her to tell the whole truth. The trial court properly left the resolution of this question to the jury.

As to the testimony of Ms. Smith, Ms. Lewis' sister, the appellant reluctantly concedes in his brief "that Ms. Lewis and Ms. Smith were able to come up with substantially the same testimony". Both ladies were eyewitnesses to the incident. The thrust of appellant's arguments relating to Ms. Smith's testimony centered upon various discrepan-

---

1. Ms. Lewis testified at trial that on October 6, 1980, Mr. Hinerman invited her sister, Ms. Smith, over for a drink and that she and the appellant drove Ms. Smith to Mr. Hinerman's home in West Virginia and went in for a drink. When Mr. Hinerman became intoxicated and passed out, the appellant took $30 from his wallet and took two calculators from an adjoining office and all three left. While driving away, Ms. Lewis testified that appellant decided to go back to Mr. Hinerman's house for the purpose of killing him. Once there, he ordered Ms. Smith and Ms. Lewis to wipe off any fingerprints, and he took the intoxicated Mr. Hinerman out to his car. Ms. Lewis stated that appellant then drove to Point Marion, Pa., where he hit Mr. Hinerman (apparently with his hands), then threw him into the Cheat River.

2. The jury was aware that Ms. Lewis had been granted immunity for testifying in this case. She testified during the trial that the Fayette County District Attorney's Office had promised her immunity if she told the truth about everything that happened. She further stated that she was told that she would be prosecuted for accessory to murder if she did not tell the truth.

cies that were clearly matters to be considered by the fact finder in its assessment of the credibility of the witness appearing before it. None of these "discrepancies" reached a level which would make reconciliation impossible. The mere existence of conflict in the evidence does not mean the trier of fact was required to resort to speculation. *Commonwealth v. Duncan, supra.*

■ Here the jury was properly charged as to how they should assess the evidence received from persons they deemed to be accomplices. *Commonwealth v. Upshur,* 488 Pa. 27, 410 A.2d 810 (1980); *Commonwealth v. Russell,* 477 Pa. 147, 383 A.2d 866 (1978). In addition, the mere existence of conflict in the prosecution's evidence is not fatal because the Commonwealth is not bound by everything its witnesses say and the jury has the discretion in believing all, part, or none of the testimony. *Commonwealth v. Duncan, supra; Commonwealth v. Roux,* 465 Pa. 482, 350 A.2d 867 (1976); *Commonwealth v. Mahoney,* 460 Pa. 201, 331 A.2d 488 (1975); *Commonwealth v. Jones,* 452 Pa. 569, 308 A.2d 598 (1973). We are therefore satisfied the jury could properly reconcile the conflicting testimony and that the evidence from these witnesses when considered together, along with all of the other testimony presented, does not demonstrate the degree of unreliability requiring a finding that the verdict was based upon mere conjecture.

Although we reject appellant's claim seeking dismissal of the charges on the grounds that the evidence was insufficient, we are nevertheless constrained to conclude that a new trial must be awarded because of an impermissible restriction upon the right of cross-examination by the defense of a key prosecution witness. Trial counsel sought to cross-examine Ms. Lewis regarding her self-admitted robbery-homicide of Wilby Stamper which occurred in West Virginia on June 20, 1980.[3] It is unchallenged that appel-

3. On June 20, 1980, Ms. Lewis accompanied one Willy Stamper to the bank, where he withdrew $1,000 from his account. This money was to be used for his anticipated move to Florida, in which he was to be accompanied by Ms. Lewis. After leaving the bank, Ms. Lewis

lant, who was incarcerated at the time of the Stamper killing, was in no way involved in that incident.

The trial court viewed this area of inquiry as being directed to unrelated criminal conduct on the part of the witness and refused to permit it since at the time Ms. Lewis had not been convicted for that offense. Unfortunately, trial counsel also failed to perceive the true significance of this evidence to his client's case and in fact agreed with the trial court's erroneous determination that the evidence was not relevant to the Hinerman robbery-killing. It is obvious that this was a serious misjudgment on the part of trial counsel which severely damaged his client's case.[4]

At trial there was no dispute that Ms. Lewis and Ms. Smith were present and participated in the robbery-murder of Mr. Hinerman. The disputed question was appellant's involvement. Ms. Lewis and Ms. Smith provided the only testimony as to appellant's actual participation in the robbery-murder. The crux of Ms. Lewis' testimony was that appellant was present throughout the incident, that it was appellant's idea to rob and then later to kill the victim and that she and Ms. Smith were merely unwilling participants because of their fear of appellant. The Commonwealth's theory of the case was also bolstered by the suggestion that the two ladies alone did not possess the physical capability to commit the crime.

The defense was that the robbery-murder of Mr. Hinerman was committed by Ms. Lewis and Ms. Smith alone. The

drove to a remote area and, accompanied by another female, strangled Mr. Stamper to death with a rope, and took the $1,000. The women then transported the body from West Virginia to a farmhouse in Greene County, Pa. and left it. Ms. Lewis who allegedly masterminded the plan, confessed to the Stamper murder on October 30, 1980 and she then took the police to the Pennsylvania farmhouse where they found his skeletal remains.

4. Post-trial motions were initially filed by trial counsel, however, when appellant alleged that he had received ineffective assistance of counsel, new counsel was appointed. In supplemental post-trial motions, new counsel (who also represented appellant throughout this appeal) raised substantive questions of law as well as numerous charges of ineffective assistance of trial counsel.

defense at trial contended that appellant was not present during the incident and was not aware of what the two ladies were doing. Appellant testified that he later became involved when he aided Ms. Lewis in selling two calculators (which were fruits of the robbery) being unaware at that time of the murder.

As noted by present appellate counsel the questioning of Ms. Lewis relating to the Stamper killing could have established both her inclination and capacity to commit such a crime with the assistance of a female companion and without the aid of a male partner. Moreover, the striking similarities between the two crimes would have supported appellant's contention that the two ladies committed the Hinerman killing without his knowledge, aid or assistance.[5] Thus the proposed area of inquiry was clearly relevant to a crucial factual issue raised at trial.

Evidence of a crime other than the one charged is clearly relevant and admissible for establishing a common plan, scheme or design. See, *Commonwealth v. Galloway, supra; Commonwealth v. DeVaughn,* 488 Pa. 629, 413 A.2d 660 (1980); *Commonwealth v. Patterson,* 484 Pa. 374, 399 A.2d 123 (1979); McCormick on Evidence, § 190 (2nd Ed. 1972) Nor does the introduction of such evidence depend upon a showing of a conviction of the "other crime".[6] *Commonwealth v. Galloway, supra; Commonwealth v. De-Vaughn, supra.*

It is therefore evident that the line of inquiry relating to the Stamper incident was not merely a general assault

---

**5.** Both the Stamper murder and the Hinerman murder involved older male victims from West Virginia who had a relationship with one of the two women involved. Both involved the robbery of the victims, and both involved the disposal of the bodies in a remote area in Pennsylvania.

**6.** We note that the trial court did recognize this distinction when it ruled the prior bad acts of the defendant were relevant to establish the Commonwealth's witnesses' claim that they were intimidated by appellant. In that instance the court properly admitted that evidence even though there was no arrest, indictment, or conviction. The same rationale was clearly applicable here.

upon the veracity of the witness by showing prior criminal behavior of that witness, but rather that evidence would have significantly undermined the truthfulness of the version of the facts presented by Ms. Lewis in the trial in this case. The failure of counsel to recognize the full potential of this line of inquiry and to urge its allowance on proper grounds constitutes ineffective representation which standing alone would require an award of a new trial.

■ It is axiomatic that the test for evaluating a claim of ineffective assistance of counsel is whether the record supports a conclusion that the particular course chosen by counsel had some reasonable basis designed to effectuate his client's interest. As we stated in *Commonwealth ex rel Washington v. Maroney*, 427 Pa. 599, 604–05, 235 A.2d 349, 352–53 (1967):

> The test is *not* whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decision had any reasonable basis. (Emphasis in original.)

*Commonwealth v. Musi*, 486 Pa. 102, 404 A.2d 378 (1979); *Commonwealth v. Hosack*, 485 Pa. 128, 401 A.2d 327 (1979); *Commonwealth v. Weathers El*, 485 Pa. 28, 400 A.2d 1295 (1979); *Commonwealth v. Treftz*, 485 Pa. 297, 401 A.2d 1325 (1979).

We can perceive no reasonable basis for trial counsel's failure to recognize the significance of the Stamper murder and his subsequent failure to properly advocate its relevancy to the trial court. Keeping in mind the critical nature of this evidence to the appellant's case, we therefore find that trial counsel failed in his responsibility to his client in this critical respect.

Moreover, we also find that the trial court erred in ruling that because Ms. Lewis had not been "convicted" of the Stamper murder at the time of the instant trial, her confes-

sion relating to that murder was not admissible to impeach her credibility.[7]

We have long held that, *as a general rule,* prior bad acts not resulting in a conviction are not admissible to impeach a witness' credibility. *Commonwealth v. Taylor,* 475 Pa. 564, 381 A.2d 418 (1977); *Commonwealth v. Reese,* 475 Pa. 120, 379 A.2d 1312 (1977); *Commonwealth v. Katchmer,* 453 Pa. 461, 309 A.2d 591 (1973); *Commonwealth v. Ross,* 434 Pa. 167, 252 A.2d 661 (1969). The rationale for this rule has been repeatedly stated as follows:

> [T]here is a vast difference between a conviction and a mere accusation. An inquiry as to a mere arrest or indictment is not permitted because an arrest or an indictment does not establish guilt, and the reception of such evidence would merely constitute the reception of somebody's hearsay assertion of the witness' guilt.

*Katchmer* 453 Pa. at 465, 309 A.2d at 593; 3 Wigmore, Evidence § 980(a) (Chadbourn rev. 1970).

In keeping with this rationale, we have held that evidence of a "mere arrest" is not admissible to impeach a witness because an arrest is quite consistent with innocence, noting that the presumption of innocence is at the heart of our criminal jurisprudence. *Commonwealth v. Taylor, supra.*

■ The instant case, however, does not fit into the general rule established by these aforementioned cases, because here the witness admitted her guilt, and led the police to the body of the victim. The rationale for the general rule has no application where we are not confronted with a "mere accusation, or arrest, or indictment"; nor is this a situation where there is reliance upon "somebody's hearsay assertion of the witness' guilt." "It is fundamental that no rule of law should ever be applied unless the purpose for which it was developed will be served by its application in a given case." *Commonwealth v. Coley,* 466 Pa. 53, 65, 351 A.2d 617, 623 (1976).

7. This issue was preserved in that an objection was noted at trial and was raised in the supplemental post-trial motions filed by the appellant's new appellate counsel.

Here we have a confession which was given by the witness, attesting to her guilt. The West Virginia authorities were first made aware of the crime as a result of the confession by Ms. Lewis. Additionally, her confession was corroborated by the discovery of the body of Mr. Stamper. Therefore, we believe that where as here a clear and unequivocal confession was on record along with corroborating evidence, it was proper to use this evidence to impeach the credibility of Ms. Lewis. We, therefore, hold that the trial court's ruling to the contrary was error.

Accordingly, the judgment of sentence is reversed and a new trial awarded.[8]

LARSEN, McDERMOTT and HUTCHINSON, JJ., concur in the result.

8. In view of our disposition of this case, we do not address the other issues raised by appellant. These issues are as follows: Whether the trial court erred by; a) prohibiting the cross-examination of certain witnesses as to the type of cigarette that Mr. Hinerman smoked; b) failing to grant appellant's pre-trial motion for a change of venue; c) failing to grant appellant's pre-trial motion to quash the information against the appellant; d) failing to grant appellant's demurrer to the charge of criminal homicide; e) failing to define the elements of robbery to the jury. Appellant also raised the issues of whether sections 9711(d)(9) and 9711(c)(iv), 42 Pa.C.S. § 9711(d)(9), (c)(iv), are unconstitutionally vague; whether the death penalty constitutes cruel and unusual punishment; and other allegations of trial counsel's ineffectiveness.