J-S67029-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| WILLIAM LEWIS, | : | |
| | : | |
| Appellant | : | No. 3825 EDA 2016 |

Appeal from the Judgment of Sentence November 10, 2016
in the Court of Common Pleas of Chester County
Criminal Division at No(s):  CP-15-CR-0001072-2000

BEFORE:   GANTMAN, P.J., MUSMANNO, J., and STEVENS*, P.J.E.

MEMORANDUM BY MUSMANNO, J.:        **FILED DECEMBER 19, 2017**

William Lewis ("Lewis") appeals from the judgment of sentence imposed following his conviction of twelve counts each of robbery (inflict or intentionally put in fear of bodily injury), robbery (threaten or intentionally put in fear of serious bodily injury), simple assault (physical menace), terroristic threats, unlawful restraint (risk of injury), unlawful restraint (involuntary servitude); two counts of simple assault (causing or attempting to cause bodily injury); and one count each of conspiracy to commit robbery (threaten or intentionally put in fear of serious bodily injury), conspiracy to

_____

* Former Justice specially assigned to the Superior Court.

commit robbery (inflict or intentionally put in fear of bodily injury), theft by unlawful taking, and receiving stolen property.[1] We affirm.

In its Opinion, the trial court set forth the relevant factual and procedural history, which we adopt for the purpose of this appeal. *See* Trial Court Opinion, 3/29/17, at 1-2.

On appeal, Lewis raises the following issues for our review:

1. Did the [trial c]ourt error [*sic*] by permitting Detective William Cahill [("Detective Cahill")] to offer an expert opinion on the meaning of "Code of the Streets" as it related to the trial testimony of James Sadler [("Sadler")] and Edward Davis [("Davis"),] without first qualifying [Detective Cahill] as an expert[,] or requiring the Commonwealth to provide a report in advance of trial outlining his qualifications and his opinion on that particular subject matter[,] and the basis of that opinion[,] which was heavily relied upon by the Commonwealth in their closing argument at trial?

2. Did the [trial c]ourt err by failing to instruct the jury prior to deliberations on how they should consider the fact that both [] Sadler and [] Davis had *crimen falsi* convictions?

Brief for Appellant at 5.

In his first issue, Lewis contends that "[c]ourts have held that 'code language' is a highly specialized area, requiring knowledge of particular meanings of words in various neighborhoods." *Id*. at 28-29. Lewis asserts that the average person would not be familiar with the term "Code of the Streets." *Id*. at 28. Lewis claims that when Detective Cahill testified about

_____

[1] *See* 18 Pa.C.S.A. §§ 3701(a)(1)(i), (ii); 2701(a)(3); 2706; 2902(1), (2); 2701(a)(1); 903; 3921(a); 3925(a).

the term "Code of the Streets," he was deciphering code language that required specialized knowledge of particular meanings. *Id*. at 29. Lewis argues that, because the Commonwealth never asked the trial court to accept Detective Cahill as an expert, the court should have sustained defense counsel's objection to Detective Cahill's testimony. *Id*. Lewis contends that Detective Cahill's testimony as to having worked in Philadelphia, Lancaster, Reading, Allentown and New York "is proof that [he] is an expert in street jargon[,] and that his specialized expert knowledge of code language was only gained by his exposure to coded language of these different neighborhoods." *Id*. at 30. Lewis asserts that Detective Cahill's testimony should have been precluded because there was no basis for his opinion under Pa.R.E. 701 and 702. Brief for Appellant at 31. Lewis claims that the admission of Detective Cahill's testimony was not harmless error and constitutes reversible error. *Id*. at 31-32. According to Lewis, "the Commonwealth was permitted to question Detective Cahill as a lay witness, when he was using his expertise and specialized knowledge to decipher highly specialized coded language." *Id*. Lewis argues that "[t]he explanation of the 'Code of the Streets' by Detective Cahill was used to suggest why Sadler and Davis may recant their previous testimony." *Id*. at 33. Lewis contends that "[w]ithout the prejudicial testimony of [Detective] Cahill … the jury may have accepted the testimony of Sadler and Davis as true and correct[,] and acquitted Lewis." *Id*.

Our standard of review for considering whether a ruling on the admissibility of evidence was proper is well settled:

> Admission of evidence is a matter within the sound discretion of the trial court, and will not be reversed absent a showing that the trial court clearly abused its discretion. **Commonwealth v. Chmiel**, 558 Pa. 478, 738 A.2d 406, 414 (Pa. 1999). Not merely an error in judgment, an abuse of discretion occurs when "the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence on record." **Commonwealth v. McAleer**, 561 Pa. 129, 748 A.2d 670 (Pa. 2000).

**Commonwealth v. Montalvo**, 986 A.2d 84, 94 (Pa. 2009) (quoting **Commonwealth v. Cooper**, 941 A.2d 655, 668 (Pa. 2007)).

In its Opinion, the trial court addressed Lewis's first issue, set forth the relevant law, and determined that the issue lacks merit. **See** Trial Court Opinion, 3/29/17, at 3-4 (wherein the trial court determined that Detective Cahill did not need to be qualified as an expert because he "merely testified to a matter of general fact acquired through his employment as a police officer for 29 years and[,] therefore[,] well[-]within his knowledge as the affiant in the case."); **see also id**. at 4-5 (wherein the trial court determined that, even if the admission of Detective Cahill's testimony was in error, such error was harmless, as the evidence of Lewis's guilt was overwhelming).[2]

---

[2] Notably, even if the testimony provided by Detective Cahill could be characterized as an expert opinion, Lewis concedes that Detective Cahill was an expert in street jargon. **See** Brief for Appellant at 30.

- 4 -

We agree with the reasoning of the trial court, and affirm on this basis as to Lewis's first issue. *See id*. at 3-5.

In his second issue, Lewis contends that the trial court erred by failing to instruct the jury, prior to deliberations, on how they should consider the testimony of Sadler and Davis due to their past *crimen falsi* convictions. Brief for Appellant at 34-37.

In its Opinion, the trial court addressed Lewis's second issue, set forth the relevant law, and determined that the issue was waived. *See* Trial Court Opinion, 3/29/17, at 5 (wherein the trial court determined that the issue was waived because it was not raised before the trial court); *see also id*. (wherein the trial court further determined that the issue was also waived because Lewis's description of the issue in his Concise Statement was too vague for the trial court to identify and address the issue). We agree with the reasoning of the trial court, and affirm on this basis as to Lewis's second issue. *See id*.[3]

Judgment of sentence affirmed.

_____

[3] Even if Lewis had properly preserved this issue, we would have concluded that it lacks merit for the reasons stated by the trial court in its Opinion. *See* Trial Court Opinion, 3/29/17, at 5-6.

- 5 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/19/2017

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS

: CHESTER COUNTY, PENNSYLVANIA

vs.

: CRIMINAL ACTION

WILLIAM LEWIS : NO. 1072-2000

Ronald C. Yen, Esq., Chief Deputy District Attorney
Mark J. Conte, Esq., Attorney for the Defendant

## OPINION

AND NOW, this 29th day of March, 2017, this Opinion is filed pursuant to Pa. R.A.P. 1925 and in response to William Lewis' (hereinafter, "Defendant") timely Concise Statement of Errors Complained of on Appeal and Amended Concise Statement of Errors Complained of on Appeal (hereinafter referred to collectively as "Concise Statements").

## FACTUAL AND PROCEDURAL HISTORY

We set forth only as much of the procedural history that is necessary for the issuance of this Opinion. On October 5, 2015, after a trial by jury, Defendant was convicted of twelve (12) counts of Robbery (threaten or intentionally put in fear of serious bodily injury), twelve (12) counts of Robbery (inflict or intentionally put in fear of bodily injury), one (1) count of Conspiracy to commit Robbery (threaten or intentionally put in fear of serious bodily injury), one (1) count of Conspiracy to commit Robbery (inflict or intentionally put in fear of bodily injury), two (2) counts of Simple Assault (causing or attempting to cause bodily injury), twelve (12) counts of Simple Assault (physical menace), twelve (12) counts of Terroristic Threats, twelve (12) counts of Unlawful Restraint (risk of injury), twelve (12) counts of Unlawful Restraint (involuntary servitude), one (1) count of Theft by Unlawful Taking ("TBUT"), and one (1) count of Receiving Stolen Property ("RSP").[1] On January 20, 2016 Defendant received an aggregate sentence of 29.5 to 75 years imprisonment, which was based in part on the number of victims, the severity of the offenses,[2] and Defendant's prior record score of three (3).[3] Defendant received 546 days credit for time served.

---

[1] The jury acquitted Defendant of Possessing Instruments of Crime ("PIC") and Firearms Not to be Carried Without a License. *See* Verdict, 10/5/15.

[2] During the commission of the robbery, multiple victims were taken at gunpoint, bound, gagged and threatened with death.

[3] The various prior offenses occurred both as an adult and a juvenile.



1

On January 29, 2016, Defendant filed a counseled post-trial motion (hereinafter, "Motion"). On October 12, 2016, that Motion was granted in part and denied in part. Specifically, the Court agreed with Defendant's Motion that Count 15 of the Criminal Information (TBUT) should have merged with one of the Robbery counts for sentencing purposes.[4] The Court denied all other requested relief contained in the Motion.

On December 8, 2016, Defendant filed the instant appeal from the jury's verdict and judgment of sentence imposed in this matter. By Order dated December 14, 2016, the Court directed Defendant to file of record and serve upon the undersigned a Concise Statement of Errors Complained of on Appeal (hereinafter, "Concise Statement"). On January 3, 2017, Defendant filed a counseled Concise Statement. On January 4, 2017, counsel filed an Amended Concise Statement of Errors Complained of on Appeal (hereinafter, "Amended Concise Statement").[5]

The underlying facts in support of Defendant's convictions and giving rise to this appeal are as follows. On January 9, 2000, Defendant along with four accomplices or co-conspirators committed an armed robbery of the Genuardi's Supermarket located in East Goshen Township, Chester County. Specifically, at approximately 10:37 p.m., four armed gunman, dressed like terrorists, entered the store[6] and used duct tape to restrain several employees and a delivery driver in the rear of the store before removing money from the office safe.[7] During the course of the robbery, three of the victims were injured and one of those injured victims required emergency medical attention at Brandywine Hospital for head trauma.

Shortly after the robbery, Defendant fled to North Carolina. Defendant was able to remain at large and evade capture for 14 years by assuming a false identity. On July 24, 2014, Detective Lieutenant William Cahill of the Westtown East Goshen Regional Police Department (hereinafter, "Department"), along with the assistance of the Federal Bureau of Investigation (hereinafter, "FBI") and Cumberland County, North Carolina Sheriff's Office, located Defendant in Fayetteville, North Carolina. Defendant was subsequently arrested in North Carolina and extradited back to Chester County, Pennsylvania to stand trial for the charged offenses.

## DISCUSSION

In his Concise Statements, Defendant raises two (2) issues for appellate review. Those issues verbatim are as follows:

---

[4] Consequently, on November 10, 2016, the Court vacated the 1 to 5 year sentence imposed on Count 15 of the Criminal Information. All other terms and conditions of the original sentence remained unchanged.

[5] In his Amended Concise Statement, Defendant raised one (1) additional argument that was not set forth in his original Concise Statement.

[6] The final co-conspirator, James Sadler, was a Genuardi's employee who was working the night of the robbery. Therefore, Mr. Sadler was already inside the store and did not enter the premises with the other co-conspirators.

[7] The evidence adduced at trial established that the amount of the theft of Genuardi's property totaled $28,146.20

2

COC 03/31/2017 12:25

1. The Court erred by permitting Detective William Cahill to offer an expert opinion on the meaning of the "Code of the Street" as it related to the trial testimony of James Sadler and Edward Davis without first qualifying him as an expert or requiring the Commonwealth to provide a report in advance of trial outlining his qualifications and his opinion on that particular subject matter and the basis of that opinion which was heavily relied upon by the Commonwealth in their closing argument at trial.

2. The Court erred by failing to instruct the jury prior to deliberation on how they should consider the fact that both James Sadler and Edward Davis had *crimen falsi* convictions.

Amended Concise Statement, 1/4/17. As the Court will explain, both of the issues raised by Defendant lack sufficient merit and can form no basis for a successful appeal.

In his first issue raised on appeal Defendant contends that the Court erred by permitting Detective Lieutenant Cahill to testify as to the meaning of the "Code of the Street" as it related to the testimony of co-conspirators James Sadler and Edward Davis without first qualifying the detective as an expert and requiring him to provide a report in advance of his testimony. We disagree with Defendant's argument.

It is well-established that the Pennsylvania Rules of Evidence differentiate between the requirements for expert and lay witnesses. Rule 701 states in relevant part:

> Opinion Testimony by Lay Witnesses
>
> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> (a) rationally based on the witness's perception;
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Pa.R.E. 701.

Conversely, Rule 702 states in relevant part:

> Testimony by Expert Witnesses
>
> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;

3

> (b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and
> (c) the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702.

Here, Detective Lieutenant Cahill's trial testimony was not improper "expert" testimony as claimed by Defendant. Even assuming it was opinion testimony, Pa.R.E. 701 allows for opinion testimony by lay witnesses. Detective Cahill testified at trial that he is very familiar with the meaning of the "Code of the Street" from conducting numerous police investigations and extensive career in law enforcement. N.T., 10/2/15, at 23-24. It is undisputed that Detective Lieutenant Cahill has been employed by the Westtown East Goshen Regional Police Department as a detective and patrolmen for approximately 29 years. Therefore, he is responsible for investigating all types of crimes and interviewing witnesses in multiple jurisdictions. N.T., 10/1/15, at 200-201. Accordingly, even if the detective's testimony constituted opinion evidence, it still comported with the rules of evidence.

Based on his education, training, and experience Detective Cahill was permitted to testify that in his experience the phrase "Code of the Street" means that "it's a no-no to talk to the police and give up information about your friends and people in your neighborhood. It's not accepted on the street."[8] Id. at 24-25. The trial record evidences that the prosecutor presented the detective as a fact or lay witness. Detective Lieutenant Cahill merely testified to a matter of general fact acquired through his employment as a police officer for 29 years and therefore well within his knowledge as the affiant in the case. As such, he did not need to be qualified as an expert or author a report prior to testifying at trial.

Furthermore, the testimony at issue was rationally based on Detective Lieutenant Cahill's personal observation of two co-conspirators at trial and the rational perception of their trial testimony. The detective offered a reasonable explanation to the jury as to why co-conspirators James Sadler and Edward Davis' trial testimony differed from their prior testimony. As the affiant in the case, Detective Lieutenant Cahill's testimony helped the jury understand and reconcile recantation testimony with prior testimony. Id. However, the reason the co-conspirators testified contrary to their prior sworn testimony is of less importance then the fact that they changed their testimony. The credibility of all witnesses and the weight to be accorded the evidence produced are matters within the province of the trier of fact. Here, the jury was free to believe all, some or none of the evidence introduced at trial. Commonwealth v. Smith, 467 A.2d 1120 (Pa. 1983); Commonwealth v. Nelson, 467 A.2d 638 (Pa. Super. 1983). Accordingly, the testimony was based upon Detective Cahill's perception and experience and it was helpful to a determination of facts in issue, the participation in the robbery by Defendant.

Moreover, we conclude that the admission of Detective Lieutenant Cahill's testimony as to the meaning of the "Code of the Street", even if erroneous, as Defendant argues, constitutes de minims error in spite of the overwhelming evidence of Defendant's guilt. It is well-established that not all errors at trial entitle a defendant to a new trial. Commonwealth v. Watson, 945 A.2d

---

[8] The Court permitted this testimony over the objection of defense counsel.

4

174 (Pa. Super. 2008); *Commonwealth v. West*, 834 A.2d 625 (Pa. Super. 2003), *appeal denied*, 889 A.2d 1216 (Pa. 2003).

The doctrine of "harmless error" is a technique of appellate review designed to advance judicial economy by obviating the necessity for a retrial where the appellate court is convinced that a trial error was harmless beyond a reasonable doubt. *Commonwealth v. Allshouse*, 985 A.2d 847 (Pa. 2009), *Petition for Certiorari filed*, 78 U.S.L.W. 3689 (May 13, 2010)(No. 09-1396). It is premised on the well-settled proposition that a defendant is entitled to a fair trial, but not a perfect one. *Commonwealth v. Drummond*, 775 A.2d 849, 853 (Pa. Super. 2001), *appeal denied*, 790 A.2d 1013 (Pa. 2001). Harmless error exists if (1) the error did not prejudice the defendant or the prejudice was *de minimus;* (2) the erroneously admitted evidence was merely cumulative of other untainted, substantially similar, and properly admitted evidence; or (3) **the properly admitted and uncontradicted evidence admitted at trial was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.** *Commonwealth v. Simmons*, 662 A.2d 621 Pa. (1995) (emphasis added). Accordingly, we conclude that Defendant's first issue raised on appeal lacks arguable merit.

Insofar as Defendant's final contention is concerned that the Court erred by failing to instruct the jury prior to deliberation on how they should consider the fact that both Mr. Sadler and Mr. Davis had *crimen falsi* convictions; we deem this issue waived.

The fatal flaw with Defendant's argument is that the issue was neither raised in the trial Court nor properly preserved for appellate review. See Pa R.A.P. 302(a). By requiring that an issue be considered waived if raised for the first time on appeal, appellate courts ensure that the trial court that initially hears a dispute has had an opportunity to consider the issue. Lincoln Philadelphia Realty Assoc. v. Bd. or Revision of Taxes of Philadelphia, 758 A.2d 1178, 1186 (Pa. 2000). This jurisprudential mandate is also grounded upon the principle that a trial court, like an administrative agency, must be given the opportunity to correct its errors as early as possible. Wing v. Com. Unemployment Comp. Bd. of Review, 436 A.2d 179, 181 (Pa. 1981).

Notwithstanding that this issue is procedurally defaulted, we will attempt to substantively address it to the extent that we are able to identify the claimed error. Defendant's Amended Concise Statement does little to aid our review of this issue. Specifically, the Amended Concise Statement fails to indicate where in the record a *crimen falsi* instruction was requested. Therefore, the issue raised on appeal is also waived because Defendant's Amended Concise Statement is too vague for the trial court to identify and address the issue to be raised on appeal. In other words, a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all. *See Commonwealth v. Dowling*, 778 A.2d 683, 687 (Pa. Super. 2001); *Commonwealth v. Butler*, 756 A.2d 55, 57 (Pa. Super. 2000).

Despite this fatal omission, our scouring of the trial record reveals that trial counsel did not request a *crimen falsi* instruction or objected to the Court's jury charge. Rather, during a charging conference with the Court, trial counsel stated that he was not requesting a *crimen falsi* instruction with respect to Mr. Sadler. In fact, trial counsel received his requested instruction that because Mr. Sadler will have a future parole hearing he may have a bias or interest in the

5

outcome of this case. N.T., 10/2/15, at 93-94; N.T., 10/5/15, at 87-89. Accordingly, the Court did not err by failing to instruct the jury before deliberation regarding a charge that was never requested by the parties.

In light of the foregoing, we respectfully request that the Superior Court affirm the verdict of the jury and Defendant's judgment of sentence.

BY THE COURT:

William P. Mahon,  J.

6