Sharon THOMAS, Petitioner,

v.

**WORKMEN'S COMPENSATION AP-
PEAL BOARD (IDA'S FROSTED
PRODUCTS, INC.), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted May 24, 1996.
Decided July 2, 1996.

James A. Lardani, for Petitioner.

Jody P. Mahon, for Respondent.

Before SMITH and PELLEGRINI, JJ., and MIRARCHI, Senior Judge.

PELLEGRINI, Judge.

Sharon Thomas (Claimant) petitions for review of the November 8, 1995 decision and order of the Workmen's Compensation Appeal Board (Board) affirming the Referee's decision dismissing Claimant's claim petition and denying benefits.

From April 5, 1988, until June 9, 1988, Claimant was employed by IDA's Frosted Products, doing business as Murray's Steaks (Employer) as a management-trainee.[1] Due to two incidents involving Claimant's alleged inappropriate behavior, she was discharged from employment on June 9, 1988. The first alleged incident occurred when Claimant, refusing to bag a customer's chitterlings because they smelled, told the customer to bag them herself. The second alleged incident occurred when she told a customer to "get the hell out of the store."

Over a year later, on June 21, 1989, Claimant filed a claim petition alleging that on April 19, 1988, she injured her back at work and was, as a result, disabled. The Employer answered, denying that she incurred a work-related injury. The case was assigned to Referee Wallace J. Stevenson for hearing.

At the hearing, Claimant testified that on April 19, 1988, between approximately 8:30 and 9:00 p.m., at the request of her supervisor, Paula Calicat, she bent down to pick up a case of 24 cans of frozen lemonade and she strained her back. Claimant stated that she informed Calicat of the pain but continued working. At the end of her shift, she again informed Calicat that she had injured her back and left at approximately 10:00—10:30 p.m. Two days after her alleged injury, Claimant testified that due to the pain, she went to the hospital where she was treated and released, but was absent from work for four days. She testified that she did not seek further medical treatment until after she was terminated in June of 1988. Claim-

ant testified that due to her continued pain, she has been unable to work since her termination by Employer in June of 1988.

Her treating physician, John L. Sbarbaro, M.D., an orthopaedic surgeon, based on the history given him by Claimant, opined that Claimant injured her back while lifting heavy boxes at work, causing a degenerated or bulging disc, and that the symptoms caused by such injury have progressed to the point where her low back pain is accompanied by intermittent radiculopathy in the legs.[2] He testified that Claimant's condition prevented her from working.

Due to Referee Stevenson's illness, the case was transferred to Referee Nancy Goodwin, who heard Claimant's cross-examination and testimony of Employer's witnesses. Referee Goodwin and Employer's counsel had both been associates and "house counsel" of a firm of an insurance carrier. When the case was transferred, neither Claimant nor her counsel were aware of nor were they informed by the Referee of that association.

Before Referee Goodwin, Employer presented the testimony of Paula Calicat who testified, *inter alia*, that she neither witnessed Claimant's alleged injury nor did Claimant inform her at any time on that Saturday night that she had a cramp in her back. She only became aware of Claimant's alleged injury when Claimant called her to report off the following Monday when Claimant informed her that she had sprained her back at work while lifting heavy boxes. Bernard Jones, Employer's store manager, testified that Claimant was terminated due to her problems relating to customers. Jones also testified that when he met with Claimant and informed her of her termination, that she did not claim she was having difficulty performing her job due to her injury or that such injury prevented her from working.

Finding the testimony of Calicat and Jones credible and Claimant's not, Referee Good-

---

1. As a manager-trainee, Claimant's responsibilities included paperwork, cashiering and making assignments to other employees, including two cashiers, four full-time stock clerks and three part-time stock clerks.

2. Dr. Sbarbaro explained that in layman's terms, Claimant suffers from pain in her back that extends into her buttocks, legs, thighs and across her knees.

**26**

win found that Claimant was not injured at work. The Referee also found the testimony of Claimant's physician that Claimant's condition was work-related not credible because it was based on Claimant's account of the incident at work. Concluding that Claimant failed to sustain her burden of proving that she sustained a work-related injury and that she was discharged from employment due to her problems relating to customers, the Referee denied Claimant's petition for compensation.

The Claimant appealed to the Board contending that the Referee should have recused herself because of her prior association with Employer's counsel, and that the findings of fact were not supported by substantial evidence. The Board remanded to the Referee to address her prior working relationship with defense counsel, to permit Claimant's counsel to request the Referee's recusal, and for the Referee to address any recusal request. On remand, Referee Goodwin declined to recuse because none of the criteria for recusal had been met. When the case came back to the Board, it affirmed the denial of benefits, as well as the Referee's decision not to recuse. The instant appeal followed.[3]

Claimant contends that Referee Goodwin was required to recuse because of her former legal association with Employer's counsel.[4] Recusal is only required when there is substantial reasonable doubt as to a referee's ability to preside impartially. *See Commonwealth v. Lemanski*, 365 Pa. Super. 332, 529 A.2d 1085 (1987). Because recusal is a matter of individual discretion or conscience, only the judge being asked to recuse him or herself may properly respond to that request. *Commonwealth v. Jones*, 541 Pa. 351, 663 A.2d 142 (1995). We will only reverse a judge's decision not to recuse when there was an abuse of discretion on the judge's part in not doing so. *Borough of Kennett Square v. Lal*, 164 Pa.Cmwlth. 654, 643 A.2d 1172, *petition for allowance of appeal denied*, 540 Pa. 586, 655 A.2d 517 (1994).[5]

In an analogous case, *Commonwealth v. Edmiston*, 535 Pa. 210, 634 A.2d 1078 (1993), our Supreme Court was faced with the contention of a criminal defendant that the recusal of the trial judge was mandated because he was not apprised of a past professional relationship between the trial judge and the prosecuting attorney prior to deciding to waive his right to a jury trial. The Supreme Court, referring to *Commonwealth v. Darush*, 501 Pa. 15, 459 A.2d 727 (1983), noted

3. Our scope of review is limited to a determination of whether constitutional rights were violated, errors of law were committed, or whether the findings of fact were supported by substantial evidence. *Estate of McGovern v. State Employees' Retirement Board*, 512 Pa. 377, 517 A.2d 523 (1986).

4. The Claimant also contends that the Referee failed to limit the findings of fact to the sole issue allegedly stipulated to by both parties—whether there was a deterioration of Claimant's condition from the time she ceased working for the Employer until the time she was declared to be disabled. The Claimant's only basis that such stipulation exists is a letter submitted by the Employer to the Referee in which the Employer states that "this case presents itself to you as predominantly a legal question . . ." Even assuming that this was some form of stipulation, it is clearly insufficient to limit the findings of fact made by the Referee to the issue of whether the Claimant's condition deteriorated after she was terminated by the Employer, and any contention referencing such stipulation will not be addressed.

5. Prior to May 16, 1994, there was no specific code of conduct governing referees, and referees were guided by the Code of Judicial Conduct in the Rules and Regulations of the Judicial Inquiry and Review Board. The applicable section of that Code, which Referee Goodwin considered the recusal motion under, is substantially similar to Section C of Canon 3 of the Code of Conduct for Workers' Compensation Judges, and provides as follows:

(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:
(a) he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceedings;
(b) he has served as lawyer in the matter in controversy or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer had been a material witness concerning it;

\* \* \* \* \* \*

that even where a judge was the district attorney when the offenses were committed, where he took a statement from the Commonwealth's primary witness and previously prosecuted the defendant on an unrelated charge, no recusal was required. Because the trial judge in *Edmiston* had been randomly assigned the case, had not been with the district attorney's office for over three years, and demonstrated no bias or prejudice against the appellant in favor of the prosecutor, our Supreme Court held that the trial judge was not required to recuse himself.

■ Similarly here, Referee Goodwin and Employer's counsel were members of the same firm, working as staff attorneys for an insurance company over two years prior to Referee Goodwin's involvement in this case. During that time, they had never worked together on the same case or in the same office. Referee Goodwin was randomly selected to continue the proceedings after Referee Stevenson fell ill. The record does not disclose and the Claimant does not allege that Referee Goodwin treated the Claimant unfairly during the hearings or that she demonstrated partiality toward either party. As such, there was no abuse on the part of Referee Goodwin in deciding not to recuse.

■ As to whether the Referee's findings of fact were supported by substantial evidence, the Referee found that the testimony of Employer's witnesses that Claimant never lifted heavy boxes and that she did not inform them that she injured herself credible, and Claimant's testimony that she injured herself and informed employer not credible.[6] Because the Referee is the ultimate finder of fact and the sole arbiter of credibility, the testimony of Employer's witnesses constitutes substantial evidence to support the Referee's findings. *Markle v. Workmen's Compensation Appeal Board (Caterpillar Tractor Co.)*, 541 Pa. 148, 661 A.2d 1355 (1995).[7] Accordingly, the decision of the Board is affirmed.

### ORDER

AND NOW, this 2nd day of July, 1996, the decision of the Workmen's Compensation Appeal Board, No. A94–3600, dated November 8, 1995, is affirmed.

---

6. Claimant initially puts great emphasis on the Referee's acceptance of an incorrect date of injury. The alleged date of injury referred to in the Referee's findings of fact is April 19th, 1988, while Claimant now contends the actual date of injury was April 16th, 1988. First, it was Claimant herself, in her claim petition and testimony, that alleged April 19th as the date of injury. Moreover, because the Referee determined that the Claimant was never injured at work, the actual date of that non-injury is of no consequence.

7. Finally, Claimant contends that by rejecting Claimant's unopposed medical testimony, the Referee acted with capricious disregard of the evidence. In this case, Claimant misconstrues the applicable scope of review. The capricious disregard standard applies where the party with the burden of proof is the *only* party to present evidence and yet loses before the fact-finder. *Iacono v. Workmen's Compensation Appeal Board (Chester Housing)*, 155 Pa.Cmwlth.234, 624 A.2d 814 (1993), *affirmed*, 536 Pa. 535, 640 A.2d 408 (1994).