**Dr. Natawadee STEINHOUSE and Jessie Stripling, Petitioners,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (A.P. GREEN SERVICES), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 5, 2001.
Decided Aug. 24, 2001.

---

**3.** Six to twenty-three months (original sentence), plus twelve to thirty-six months (revocation sentence).

Brian Steiner, Philadelphia, for petitioners.

Wendy L Slear, Philadelphia, for respondent.

Before DOYLE, President Judge,SMITH, Judge and FLAHERTY, Senior Judge.

FLAHERTY, Senior Judge.

Natawadee Steinhouse, M.D. (Provider) petitions for review of an order of the Workers' Compensation Appeal Board (Board) which affirmed the decision of a

workers' compensation judge (WCJ) denying Provider's Petition for Review of Utilization Review Determination (Utilization Review Petition). We vacate and remand for the reasons set forth below.

Pursuant to a Notice of Compensation Payable, Jesse Stripling (Claimant) began receiving compensation benefits for an injury described as "head concussion, neck, back, right knee and mouth" that occurred while he was working for A.P. Green Services (Employer) on April 9, 1980. In 1986, Claimant began receiving medical treatment from Provider. Thereafter, on October 15, 1991, Claimant filed a Penalty Petition because Employer stopped paying his medical bills. A workers' compensation judge issued an opinion on March 25, 1994 granting the Penalty Petition and finding that Claimant's medical bills are "reasonable and related to Claimant's work-related injury." (Exhibit C–1, p. 3).

On April 4, 1994 Employer filed an Initial Request for Utilization Review requesting a determination as to whether Claimant's treatment is reasonable, necessary and appropriate and stating that "Claimant has been receiving medical treatment from this Provider for [the April 9, 1980] injury since June 23, 1988—3–5 times weekly. Treatment consists of therapeutic exercises, electrical stim, ultra sound, hot packs and vitamin B–12 injections. Claimant has not progressed and continued treatment is supportive only. There appears to be an over utilization of physical therapy treatment here."[1] The Utilization Review Organization (URO) concluded that Claimant's treatment is not reasonable or necessary. Thereafter, Provider filed a Utilization Review Petition, and this case was assigned to the WCJ.

Provider testified that she has not received payment for treatment that she provided to Claimant, which consisted of physical examinations, injections to relieve pain, hydrocollator pack (moist heat) treatments to relieve pain and ultrasound treatments to relieve pain and enhance healing. Provider testified that all these treatments are necessary for the treatment of Claimant's injuries that were caused by the April 9, 1980 work-related accident (N.T. 3/10/92, pp. 17–19). Provider explained that Claimant has permanent injuries that he will not recover from and that the treatment she provides "is mainly to relieve pain and prevent further degenerative changes of the joint." (N.T. 3/10/92, p. 20).

With regard to Claimant's neck injury, Provider testified that she scheduled Claimant for a CAT scan in order to determine whether he has a disc herniation but that Claimant refused to have the CAT scan performed. She also made several appointments for Claimant with an orthopedic surgeon which Claimant never attended. Provider also testified that Claimant suffers from post traumatic stress disorder and a seizure disorder. Provider has referred Claimant to a psychiatrist, but Claimant has not made an appointment.

Employer presented the testimony of John T. Williams, M.D., who performed a review of Claimant's medical records. Dr. Williams concluded that, as of March 22, 1994, Claimant's back injury has stabilized and any further treatment is unreasonable and unnecessary. He also performed a physical examination on September 12, 1996 and concluded that, as of September 22, 1993, Provider's treatment is no longer reasonable and necessary. Additionally,

---

1. Although Employer's Petition states that Provider has been treating Claimant since 1998, Provider testified that she has been treating Claimant since 1986. (N.T. 3/10/92, p. 9).

when Dr. Williams was asked his opinion regarding physical therapy, such as ice, heat, massage, traction, ultrasound, laser treatment and electrical stimulation, he responded that:

That comes from the Agency for Health Care and Research—a government agency. And they found that those entities actually benefit low back pain patients very little. They don't even benefit. There's really no benefit to a patient with low back pain.

(N.T. 2/07/97, p. 22). At a March 12, 1998 deposition, Dr. Williams also stated that his opinion as to the use of physical therapy for the treatment of back pain is also applicable to the treatment of neck pain. As to Claimant's knee injury, he stated that the interarticular injections of steroids into Claimant's knee are not beneficial because, although this treatment might be beneficial for the treatment of inflammation, Claimant's problem is mechanical rather than inflammatory and that these injections may actually make Claimant's knee problems worse.

On April 21, 1998, the final hearing was held before the WCJ and the record was closed. On September 14, 1998, Employer sent the WCJ a letter requesting that the record be re-opened so that it could present evidence regarding Provider's qualifications to testify. The letter stated that Provider was indicted for submitting one million dollars in fraudulent claims to heath insurers. Along with the letter, Employer enclosed a newspaper article from the Philadelphia Inquirer detailing Provider's indictment by a federal grand jury. Employer wished to make this article and a certified copy of the indictment part of the record. On September 17, 1998, Provider filed a Motion for Recusal

and Reassignment requesting that the WCJ recuse himself, alleging that the submission of this evidence after the close of the record violated the Pennsylvania Rules of Evidence, was a prohibited *ex parte* communication and was an attempt to influence the WCJ's credibility determinations. Provider also asserted that, because of the WCJ's receipt of this information, he was no longer capable of rendering an impartial decision.

The WCJ issued his decision and order on September 30, 1998 without ruling on Employer's motion to re-open the record or Provider's motion for recusal and without mentioning the newspaper article and letter that he received from Employer. The WCJ rejected the testimony of Provider as not credible, convincing or worthy of belief and accepted the testimony of Dr. Williams as credible. The WCJ also found that "Claimant's alleged seizure disorder was never accepted or adjudicated to be compensable. Claimant's counsel has insisted that the March 25, 1994 Decision of Judge Lundy clearly indicates that [Provider's] prior treatment was related to the seizure disorder. To the contrary, there is nothing in Judge Lundy's 1994 Decision which would indicate that medical treatment rendered for seizure disorder by family practitioner, [Provider], was related to the work injury." (Finding of Fact No. 12). Accordingly, the WCJ concluded that the treatment rendered by Provider on and after September 22, 1993 is neither reasonable nor necessary. On October 13, 1998, Provider appealed the order of the WCJ to the Board. Thereafter, the WCJ filed an "Interlocutory Order" with a circulation date of October 20, 1998 denying Employer's request to re-open the record and denying Claimant's motion for recusal.[2] The Board affirmed the order of the

---

**2.** We note that the letter and newspaper article sent to the WCJ by Employer, the motions of the parties and the "Interlocutory Order" of the WCJ are in the Reproduced Record but

WCJ, and this appeal followed.[3]

Provider argues that the WCJ erred by failing to rule on the recusal motion, that the Board erred by failing to remand this case to another workers' compensation judge for an impartial decision, that the decision of the WCJ is not supported by substantial evidence, that the prior Penalty Petition decision is controlling as to whether the treatment for Claimant's seizure disorder is reasonable or necessary and that the testimony of Dr. Williams is equivocal.

The standard for determining whether recusal is proper is whether there is substantial reasonable doubt as to the judge's ability to preside impartially. *Thomas v. Workmen's Compensation Appeal Board (Ida's Frosted Products, Inc.),* 680 A.2d 24, 26 (Pa.Cmwlth.1996). "Because recusal is a matter of individual discretion or conscience, only the judge being asked to recuse himself may properly respond to that request. *Commonwealth v. Jones,* 541 Pa. 351, 663 A.2d 142 (1995). We will only reverse a judge's decision not to recuse when there was an abuse of discretion on the judge's part in not doing so." *Id.*

Furthermore, pursuant to Section 419 of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 852, the decision and order of a workers' compensation judge may properly be remanded when the decision is not supported by substantial evidence or where the findings of fact fail to resolve a necessary issue raised by the parties. *See also Shustack v. Workmen's Compensation Appeal Board (B–D Mining Company),* 141 Pa.Cmwlth. 296, 595 A.2d 719, 723 (1991).

Initially, we note that the newspaper article is hearsay and is inadmissible as it is not corroborated by the testimony of a witness. *See Conners v. West Greene School District,* 131 Pa.Cmwlth. 95, 569 A.2d 978, 983 (1990) ("Facts" pled that were based solely on an article in a local newspaper and not upon any affiant's personal knowledge are hearsay). Furthermore, the indictment would also be inadmissible to impeach Provider's credibility. *Commonwealth v. Smith,* 502 Pa. 600, 611, 467 A.2d 1120, 1125–1126 (1983). In *Smith,* the Pennsylvania Supreme Court held that:

.... as a general rule, prior bad acts not resulting in a conviction are not admissible to impeach a witness' credibility. *Commonwealth v. Taylor,* 475 Pa. 564, 381 A.2d 418 (1977); *Commonwealth v. Reese,* 475 Pa. 120, 379 A.2d 1312 (1977); *Commonwealth v. Katchmer,* 453 Pa. 461, 309 A.2d 591 (1973); *Commonwealth v. Ross,* 434 Pa. 167, 252 A.2d 661 (1969). The rationale for this rule has been repeatedly stated as follows:

[T]here is a vast difference between a conviction and a mere accusation. **An inquiry as to a mere arrest or indictment is not permitted because an arrest or an indictment does not establish guilt, and the reception of such**

---

are not contained in the original record because they were submitted after the close of the record, which the WCJ declined to reopen. However, as evidenced by the briefs of the parties submitted to this Court, the facts surrounding the events that occurred after the close of the record are uncontested.

3. This court's appellate review over an order of the Board is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or an error of law was committed. *Republic Steel Corp. v. Workmen's Compensation Appeal Board (Petrisek),* 537 Pa. 32, 640 A.2d 1266 (1994).

evidence would merely constitute the reception of somebody's hearsay assertion of the witness' guilt. *Katchmer*, 453 Pa. at 465, 309 A.2d at 593; 3 Wigmore, Evidence § 980(a) (Chadbourn rev.1970).

*Id.* (emphasis added).[4]

 With regard to Provider's motion for recusal, the WCJ erred by failing to rule on this motion before issuing his decision. The "Interlocutory Order" is not interlocutory, as it was not issued while this matter was still pending but was improperly issued after the Utilization Review Petition had already been decided. Additionally, it is not even part of the original record in this case because the WCJ never admitted it into the record. The WCJ's failure to resolve a necessary issue raised by the parties before issuing the decision requires that we vacate his decision and remand this case to allow him to address this issue before rendering a new decision. *Shustack.* Furthermore, pursuant to *Thomas*, the decision of whether or not to recuse must initially be made by the WCJ and is a matter of his discretion. Because the WCJ failed to exercise his discretion and make a determination as to whether he should recuse himself before rendering a decision in this matter, this Court is unable to conduct an effective appellate review of the WCJ's decision. On remand, the WCJ must determine whether his receipt of the newspaper article, which is inadmissible hearsay, affected his ability to render an impartial decision. If so, then the WCJ must recuse himself. If the WCJ determines that he is still able to impartially determine the merits of Provider's Utilization Review Petition, then he is instructed to render a new decision that includes an explanation as to why he believes that he is still able to render and impartial decision. Therefore, if this matter comes before this Court again on appeal, we will be able to conduct an effective appellate review of the WCJ's decision.[5]

Accordingly, the order of the Board is vacated and this case is remanded to the Board for further remand to the WCJ for a decision consistent with the foregoing opinion.

## ORDER

AND NOW, August 24, 2001, the order of the Workers' Compensation Appeal Board (Board) docketed at A98–4044 and dated August 10, 2000 is hereby VACATED and this case is REMANDED to the Board for further remand to the Workers' Compensation Judge for a decision consistent with the foregoing opinion.

Jurisdiction relinquished.

4. Although the rules of evidence are relaxed in administrative proceedings, hearsay evidence, properly objected to, is not competent to support a finding and will be excluded from the record. *Walker v. Unemployment Compensation Board of Review*, 27 Pa. Cmwlth. 522, 367 A.2d 366 (1976). Furthermore, we believe that the principle of presumption of innocence until proven guilty which is the basis for the Supreme Court's holding in *Smith* is equally applicable in an administrative proceeding when assessing witness credibility.

5. Because we vacate and remand the decision of the WCJ, we do not reach the remaining arguments raised in Provider's Petition for Review.