J.S45032/14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| IDRIS ENLOW, | : | |
| | : | |
| Appellant | : | No. 1969 EDA 2013 |

Appeal from the PCRA Order June 11, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division No(s).: CP-51-CR-0410711-2005

BEFORE: BOWES, WECHT, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:          **FILED DECEMBER 22, 2014**

Appellant, Idris Enlow, appeals from the order dismissing as untimely his second *pro se* petition filed pursuant to the Post Conviction Relief Act[1] ("PCRA") as untimely. Appellant avers, *inter alia*, that the PCRA court erred in dismissing his petition as untimely because after-discovered facts satisfied an exception to the time-bar pursuant to 42 Pa.C.S. § 9545(b)(1)(ii). We affirm.

This Court on direct appeal summarized the facts of this case as follows:

---

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

On January 12, 2004, a confidential informant, Rodney Frye, contacted Officer James Cullen. As a result of the conversation, Officer Cullen and Sergeant Robert Friel began a surveillance investigation of [Appellant], which involved several other officers in the Narcotics Field Unit ("NFU"). On the morning of January 12, 2004[,] Mr. Frye met [Appellant] at the Home Depot parking lot located at 4200 Roosevelt Boulevard where [Appellant] had a conversation with Mr. Frye. Mr. Frye testified that this conversation involved the purchase of cocaine. Following the conversation, Mr. Frye and [Appellant] left the parking lot.

Shortly thereafter, Mr. Frye received a phone call from [Appellant]. As a result of the conversation[,] Mr. Frye went to 1510 Widener Street to wait for [Appellant]. The NFU officers followed Mr. Frye to 1510 Widener Street where [Appellant's] empty CLIP[2] van was observed parked near the 1510 Widener Street address. Approximately ten (10) minutes after the NFU officers and Mr. Frye arrived, [Appellant] exited 1510 Widener Street and Mr. Frye spoke with [Appellant] once more. Mr. Frye testified that [Appellant] related that he did not have his cocaine supply at the 1510 Widener Street residence at the time so they would have to meet again at another location.

At approximately 4:00 p.m. on the same afternoon, Mr. Frye contacted [Appellant] to order cocaine. As a result of the conversation Mr. Frye went to 4231 North 9th Street. Before he left however, the NFU officers searched Mr. Frye's person for narcotics and money with negative results, and then provided him with four hundred and twenty-five dollars ($425.00) in pre-recorded U.S. currency. The NFU officers then followed Mr. Frye to 4231 North 9th Street where [Appellant] admitted Mr. Frye into the residence. Mr. Frye testified that once he was inside the residence, he saw [Appellant] go to the second floor and come back downstairs with the cocaine. Mr. Frye gave [Appellant] the pre-recorded money in exchange for the

---

[2] "CLIP" is Philadelphia's Community Life Improvement Program. Commonwealth's Brief at 2.

cocaine. Mr. Frye left the residence and then the NFU officers followed him to a predetermined location. At this location, the NFU officers recovered approximately thirteen (13) grams of cocaine from the person of Mr. Frye.

The surveillance continued and on January 13, 2004, in the early evening, the NFU officers observed [Appellant] and an unidentified male get into the CLIP van near CLIP headquarters. The NFU officers followed [Appellant] and the unidentified male to 5415 Howland Street. The men exited the vehicle empty handed, rang the door bell, waited for the door to open, and then remained at the residence for approximately fifteen (15) to twenty (20) minutes. [Appellant] exited the residence carrying a silver metallic bag. [Appellant] and the unidentified male then returned to CLIP headquarters.

The NFU officers observed [Appellant] and the unidentified male exist the CLIP van and get into an F-150 Ford Truck, which was registered to [Appellant]. The NFU officers observed [Appellant] carrying a metallic silver bag and the unidentified male carrying a brown cardboard box. The NFU officers followed [Appellant] and the unidentified male to 4231 North 9th Street where both men exited the vehicle and entered the residence with their respective containers in hand.

On that same day, Mr. Frye met with the NFU officers at a predetermined location where [he] placed a phone call to [Appellant] to order cocaine. As a result of the conversation, Mr. Frye went to the residence at 4231 North 9th Street once more. Before Mr. Frye left, the NFU officers searched Mr. Frye's person for narcotics and money with negative results, and then provided him with four-hundred dollars ($400.00) in pre-recorded U.S. currency. Mr. Frye testified that upon arrival he entered the residence and made an exchange of money for cocaine with [Appellant]. . . . [T]he NFU officers recovered approximately ten (10) grams of cocaine from the person of Mr. Frye.

Sheila Reid, a resident of 1510 Widener Street, testified that [Appellant] visited 1510 Widener Street on the same evening. [Appellant] brought in a brown bag and left it on

the table for Anthony Gillard to pick up later. . . . Later that evening[,] Ms. Reid looked inside the bag and discovered large amounts of cocaine. She immediately put the drugs into her purse and stated that she intended to report their existence to the police the next morning.

On January 14, 2004, . . . the NFU officers observed [Appellant] meet Lakisha Gethers a resident of 5415 Howland Street . . . . The two hugged, had a conversation, and then left the area, Ms. Gethers in her vehicle and [Appellant] in the CLIP van. The NFU officers followed [Appellant] and . . . pulled over his vehicle . . . . [Sergeant Friel] arrested [Appellant] and recovered four hundred and twenty-three dollars ($423.00) in U.S. currency, a set of keys, a cell phone, and two (2) identification cards from [Appellant]. One of the keys confiscated from [Appellant] opened the front door to 4231 North 9th Street and another key opened the door to the second floor front bedroom of the same residence. Mr. Frye had previously supplied the NFU officers with the cell phone number he had called to arrange the drug transactions. At the scene, Sergeant Friel dialed this phone number and the cell phone which had been confiscated from [Appellant] began ringing as a result. The NFU officers also recovered two (2) packages of cocaine from the van[,] which had a total weight of approximately nine (9) grams.

Simultaneously, other NFU officers executed warrants for the residences at 1510 Widener Street, 4231 North 9th Street, 5415 Howard Street, and the Ford F-150 truck. At 1510 Widener Street, NFU officers entered the residence by using a ram to break down the door. Once inside they encountered Ms. Reid. Ms. Reid stated "the stuff you're looking for is in my purse." Officers found approximately one-hundred and thirteen (113) grams of cocaine in Ms. Reid's purse. Ms. Reid stated that [Appellant] had been there earlier and dropped off these drugs. . . .

At the 4231 North 9th Street residence . . . the officers confiscated scales, a respirator mask, three (3) pots and cocaine powder and residue. . . . In the front bedroom, officers found Bernard Brown, a twelve (12) gauge semi-automatic shotgun with five (5) live rounds, and a pair of

pants belonging to Bernard Brown[,] which contained keys to [the] rear bedroom. In the middle bedroom, officers found Edmund Brown, Joy Bailey, and Jenette Williams; and clear plastic bags, green-tinted Ziploc packets, pink-tinted Ziploc packets, and red plastic packets. In the rear bedroom, the officers found several bags of cocaine base and cocaine powder, fifteen (15) pink Ziploc packets of cocaine base, and seven (7) green Ziploc packets of cocaine base. Officers found additional bulk marijuana total[ing] one-hundred and seventy-six (176) grams and cocaine base/powder total[ing] one-hundred and twenty-two (122) grams.

At the 5145 Howland Street residence, officers searched the bedroom of Lakisha Gethers. . . . Inside her dresser they found two (2) shoe boxes; one contained a .40 caliber handgun and the other contained two (2) large bags of cocaine. The total weight of the drugs at this location was two-hundred and fourteen (214) grams.

Appellant proceeded to a jury trial commencing on March 2, 2006, and ending on March 6, 2006, when the jury returned a verdict of guilty on one count of PWID/Delivery of a controlled substance and one count of criminal conspiracy. . . . Appellant was sentenced to a mandatory minimum sentence of 7 to 14 years' imprisonment on April 18, 2006.

*Commonwealth v. Enlow*, 1375 EDA 2006 (unpublished memorandum at 2-5) (Pa. Super. Aug. 8, 2007) (citation omitted).

We add that during trial, Mr. Frye testified about his prior criminal record, including his violation of probation in Georgia and an open warrant for his arrest in Chester County. N.T. Trial, 3/1/06, at 138-39, 150-51. The jury was not asked to determine the weight of the drugs. Appellant appealed to this Court, which affirmed on August 8, 2007. Appellant did not file a petition for allowance of appeal with our Supreme Court.

Appellant filed a timely first PCRA petition on February 11, 2008. The PCRA court appointed David Rudenstein, Esq., as counsel, who filed an amended PCRA petition. Appellant alleged trial counsel was ineffective for failing to (1) consult with him about whether to move for a mistrial, (2) move for a mistrial, and (3) impeach Mr. Frye. The PCRA court denied relief, and this Court affirmed. *Commonwealth v. Enlow*, 2302 EDA 2009 (Pa. Super. Nov. 29, 2010).

Appellant, *pro se*, filed the underlying, second PCRA petition on August 24, 2012, and filed an amended petition on March 21, 2013. He alleged prosecutorial misconduct by suppressing the criminal record of Mr. Frye, trial counsel was ineffective by not impeaching Mr. Frye, and a newspaper article reported that NFU officers, including Officer Jeffrey Cujdik, planted evidence in an unrelated case. On May 15, 2013, the PCRA court issued a Pa.R.Crim.P. 907 notice of intent to dismiss. On June 1, 2013, Appellant filed a response in opposition. On June 11, 2013, the PCRA court dismissed Appellant's second PCRA petition.

Appellant timely appealed and timely filed a court-ordered Pa.R.A.P. 1925(b) statement. Appellant's Rule 1925(b) statement did not challenge the imposition of a mandatory minimum sentence. Appellant also moved for leave to file a supplemental brief addressing *Commonwealth v. Castro*, 93 A.3d 818 (Pa. 2014), which this Court granted. Appellant filed a

supplemental brief discussing *Castro*, *supra*, and also replying to the arguments raised in the Commonwealth's brief.

Appellant raises the following issues in his initial brief:

Whether the PCRA court erred in finding that Appellant's claims of previously undisclosed or otherwise unavailable evidence concerning the criminal status of a key Commonwealth witness, who had open criminal charges and a warrant for his arrest at the time he alleged to have purchased cocaine form [sic] Appellant failed to meet the "after-discovered facts" exception of 42 Pa.C.S. § 95445(b)(1)(ii)?

Whether the PCRA court applied the incorrect legal standard in evaluating whether subsequent allegations of theft, physical abuse and planting/fabricating evidence made against members of the Philadelphia NFU were sufficient to meet the "after-discovered facts" exception of 42 Pa.C.S. § 9545(b)(1)(ii)?

Whether Appellant's substantive claims of prosecutorial misconduct and/or previously unavailable exculpatory evidence, (respectively asserted pursuant to 42 Pa.C.S. § 9543(a)(2)(i) and 9543(a)(2)(vi)) are sufficient to warrant an evidentiary hearing?

Whether the trial court's imposition if [sic] the mandatory minimum sentence of 7 to 14 years' incarceration on the charges of delivery/possession with intent to deliver a controlled substance pursuant to 18 Pa.C.S. § 7508 was illegal for the reason that the facts necessary for imposition of the mandatory minimum were not found by the jury beyond a reasonable doubt as required by the rule announced in *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and interpretatively applied in *Alleyne v. United States*, 133 S. Ct. 2151 (2013)?

Appellant's Brief at 4. Appellant, in his supplemental brief, raises the following issues:

> Contrary to the Commonwealth's contentions, the present case is distinguishable from that recently addressed by the Pennsylvania Supreme Court in **Commonwealth v. Castro**, 19 EAP 2013 (June 16, 2014).
>
> Whether or not the allegations of police misconduct contained in the January 24, 2013 newspaper article of issue may or may not have been publicly known as early as March 30, 2009 is of no moment in the present case.
>
> The Commonwealth's contentions concerning Appellant's purported knowledge of Commonwealth witness Rodney Frye's criminal status at the time he alleged to have purchased cocaine from Appellant finds no support in the record.

Appellant's Supplemental Brief at i.

We summarize Appellant's arguments for the first three issues of his initial brief and the issues in his supplemental brief together. Appellant suggests that within sixty days of filing his second PCRA petition, he learned that Mr. Frye, at the time of Appellant's trial, had criminal charges pending against him in Chester County, Pennsylvania and Georgia. Appellant asserts the Commonwealth failed to disclose such information to him, or if the Commonwealth was unaware, that such information exculpates him. Appellant also claims that on January 25, 2013—after he filed his second PCRA petition—he learned about a newspaper article alleging members of the NFU, including Officer Cujdik, were corrupt. He argues the Commonwealth failed to disclose that information to him prior to his 2006 trial or prior to the publication of the newspaper article. **See** Appellant's Brief at 24. Appellant maintains that he was deprived of the opportunity for

a fair trial based upon the allegations raised in the newspaper article. For these issues, we hold Appellant is due no relief.

Before addressing the merits of Appellant's claims, we examine whether we have jurisdiction to entertain the underlying PCRA petition. **See Commonwealth v. Fahy**, 737 A.2d 214, 223 (Pa. 1999). "Our standard of review of a PCRA court's dismissal of a PCRA petition is limited to examining whether the PCRA court's determination is supported by the evidence of record and free of legal error." **Commonwealth v. Wilson**, 824 A.2d 331, 333 (Pa. Super. 2003) (*en banc*) (citation omitted). A PCRA petition "must normally be filed within one year of the date the judgment becomes final . . . unless one of the exceptions in § 9545(b)(1)(i)-(iii) applies and the petition is filed within 60 days of the date the claim could have been presented." **Commonwealth v. Copenhefer**, 941 A.2d 646, 648 (Pa. 2007) (citations and footnote omitted).

> The PCRA's timeliness requirements are jurisdictional in nature and must be strictly construed; courts may not address the merits of the issues raised in a petition if it is not timely filed. It is the petitioner's burden to allege and prove that one of the [three] timeliness exceptions applies.

**Commonwealth v. Abu-Jamal**, 941 A.2d 1263, 1267-68 (Pa. 2008) (citations omitted).

The three timeliness exceptions are:

> (i) The failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or

laws of this Commonwealth or the Constitution or laws of the United States;

(ii)   the **facts** upon which the claim is predicated were **unknown** to the petitioner **and** could not have been ascertained by the exercise of **due diligence**; or

(iii)   the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii) (emphases added); ***accord Commonwealth v. Bennett***, 930 A.2d 1264, 1271 (Pa. 2007).  To preserve a claim for an illegal sentence, the PCRA petition must be timely filed.  ***See Fahy***, 737 A.2d at 223 (holding, "Although legality of sentence is always subject to review within the PCRA, claims must still first satisfy the PCRA's time limits or one of the exceptions thereto.").

With respect to after-discovered evidence, in ***Commonwealth v. Castro***, 93 A.3d 818 (Pa. 2014), our Supreme Court addressed "whether a newspaper article submitted as the sole support for a motion for new trial on the basis of after-discovered evidence warrants the grant of a hearing." ***Id.*** at 819.  According to the ***Castro*** Court:

On March 30, 2009, four days after [the ***Castro*** defendant's] trial, the Philadelphia Daily News published an article alleging police misconduct by Officer Cujdik, his brother (also a narcotics officer), and other officers during a raid of a convenience store in 2007. . . .

\* \* \*

> [The **Castro** defendant] filed a post-sentence motion for a new trial on the basis of after-discovered evidence based solely on the newspaper article that stated Officer Cujdik was under investigation for corruption and falsification of evidence in another case involving the same confidential informant.

*Id.* at 820. The trial court denied the defendant's motion but the *en banc* Superior Court reversed. *Id.* at 821.

The **Castro** Court reversed the *en banc* Superior Court and held that because the newspaper article is not evidence, it cannot qualify as "after-discovered" evidence:

> We need not belabor the question of whether a newspaper article is evidence—the parties agree the article itself is not evidence.[11] The Superior Court erred in treating the article as containing evidence; the article contains allegations that suggest such evidence may exist, but allegations in the media, whether true or false, are no more evidence than allegations in any other out-of-court situation. Nothing in these allegations, even read in the broadest sense, can be described as "evidence," and references to the officer being under investigation for misconduct contains no information regarding what evidence existed to substantiate this averment. One cannot glean from these bald allegations what evidence of misconduct appellee intended to produce at the hearing.

[11] This Court and the Commonwealth and Superior Courts have held newspaper articles generally do not constitute evidence, as they contain inadmissible hearsay. **See Commonwealth v. Ngow**, 539 Pa. 294, 652 A.2d 305, 306 (1995) (holding newspaper article was insufficient proof that baseball bat was instrument of crime; "proof may not consist of what one hears on the news"), *superseded by statute on other grounds*, **Commonwealth v. Robertson**, 874 A.2d 1200 (Pa. Super. 2005); **Presbyterian SeniorCare** [**v. Unemployment Comp. Bd. of Review**, 900 A.2d 967, 978 (Pa. Cmwlth. 2006)] (referring to newspaper article as "[u]ncorroborated

> double hearsay"); ***Steinhouse v. Workers' Compensation Appeal Board (A.P. Green Services)***, 783 A.2d 352, 356–57 (Pa. Cmwlth. 2001) (holding newspaper article regarding indictment of health care provider was inadmissible hearsay, as it was not corroborated by any witness testimony; furthermore, indictment was inadmissible to impeach provider's credibility, as it was prior bad act not resulting in conviction; arrest or indictment do not establish guilt, and are hearsay assertions of guilt); [***Commonwealth v. Saksek***, 522 A.2d 70, 71-72 (Pa. Super. 1987)] (upholding exclusion of newspaper article as inadmissible hearsay).

***Castro***, 93 A.3d at 825-26 & 825 n.11. In sum, because newspaper articles contain inadmissible hearsay, they cannot justify granting a post-sentence motion for a new trial. ***Id.***

Instantly, we review whether the PCRA court erred by holding Appellant's second PCRA petition was untimely. ***See*** 42 Pa.C.S. § 9545(b)(1), (2); ***Abu-Jamal***, 941 A.2d at 1267-68. Appellant's judgment of sentence became final on September 7, 2007, as he did not file a petition for allowance of appeal to our Supreme Court. Appellant filed the instant petition on August 24, 2012, almost five years later. Thus, this Court must discern whether the PCRA court erred in concluding Appellant did not plead and prove one of the three timeliness exceptions. ***See*** 42 Pa.C.S. § 9545(b)(1)(i)-(iii); ***Copenhefer***, 941 A.2d at 648.

With respect to Appellant's claims regarding Mr. Frye, Appellant failed to plead and prove why he could not have discovered such information by acting with due diligence. ***See*** 42 Pa.C.S. § 9545(b)(1)(ii); ***Bennett***, 930

A.2d at 1271. Regardless, his claims do not constitute newly discovered facts, as Mr. Frye testified about his prior criminal record in Chester County and Georgia. *See* N.T. Trial, 3/1/06, at 138-39, 150-51. Thus, Appellant cannot establish that Mr. Frye's criminal record was unknown to him at the time of his trial. *See* 42 Pa.C.S. § 9545(b)(1)(ii).

As for Appellant's claims regarding Officer Cujdik and the NFU, Appellant references a January 25, 2013 article. Such information, however, was published on March 30, 2009, almost four years prior to 2013. *See Castro*, 93 A.3d at 820. Appellant did not plead and prove why he could not have discovered such information with the exercise of due diligence prior to January 25, 2013. *See* 42 Pa.C.S. § 9545(b)(1)(ii). Regardless, our Supreme Court held that newspaper articles do not generally qualify as "after-discovered" evidence in the context of a post-sentence motion for a new trial because they include inadmissible hearsay. *See Castro*, 93 A.3d at 825-26 & 825 n.11. It follows that newspaper articles generally would not qualify as facts for the purposes of 42 Pa.C.S. § 9545(b)(1)(ii), and thus Appellant has not established entitlement to relief. *See id.*

Appellant lastly opines that the court imposed an illegal sentence pursuant to *Alleyne*, which was issued on June 17, 2013, after the PCRA court dismissed his second PCRA petition but before he filed an appeal. Appellant claims that because the jury was not asked to determine the

weight of the drugs he possessed, the court impermissibly imposed an illegal sentence. We hold Appellant is due no relief.

In **Commonwealth v. Miller**, ___ A.3d ___, 2014 WL 4783558 (Pa. Super. Sept. 26, 2014), the Superior Court held the following:

> Even assuming that **Alleyne** did announce a new constitutional right, neither our Supreme Court, nor the United States Supreme Court has held that **Alleyne** is to be applied retroactively to cases in which the judgment of sentence had become final. This is fatal to [the defendant's] argument regarding the PCRA time-bar. This Court has recognized that a new rule of constitutional law is applied retroactively to cases on collateral review only if the United States Supreme Court or our Supreme Court specifically holds it to be retroactively applicable to those cases. Therefore, [the defendant] has failed to satisfy the new constitutional right exception to the time-bar.
>
> We are aware that an issue pertaining to **Alleyne** goes to the legality of the sentence. It is generally true that this Court is endowed with the ability to consider an issue of illegality of sentence *sua sponte*. However, in order for this Court to review a legality of sentence claim, there must be a basis for our jurisdiction to engage in such review. As this Court recently noted, though not technically waivable, a legality of sentence claim may nevertheless be lost should it be raised in an untimely PCRA petition for which no time-bar exception applies, thus depriving the court of jurisdiction over the claim.

**Id.** at ___, *5 (citations and punctuation omitted). Instantly, Appellant invokes **Alleyne** in his second PCRA petition. As set forth above, Appellant's claim does not satisfy any one of the PCRA's timeliness exceptions. **See id.** Having discerned no abuse of discretion or error of law, we affirm the order below. **See Abu-Jamal**, 941 A.2d at 1267-68; **Wilson**, 824 A.2d at 333.

Order affirmed.

J. S45032/14

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/22/2014